RECEIVED
AUG 2 1 2015
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| SUSAN K. STELLY, ET AL. | CIVIL ACTION NO. 6:14CV694 |
| VERSUS | JUDGE DOHERTY |
| DOLGENCORP LLC | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Currently pending before the Court is a "Motion for Summary Judgment on Liability" [Doc. 25], filed by defendant Dolgencorp, L.L.C. ("Dollar General"), whereby defendant seeks a judgment dismissing with prejudice the claims asserted by plaintiffs Susan K. Stelly and Lenet L. Stelly.[1] [Doc. 25-1, p. 10] For the following reasons, the motion is DENIED.

**I.  Background**

The following facts, as set forth by defendant, are not in dispute for purposes of this motion:

1. On March 11, 2012, Susan Stelly was a patron of the Dollar General Store located at 2436 Veterans Memorial Drive in Erath, Louisiana, when she was involved in the incident at issue in this lawsuit. Rec. Doc. 17, 2nd Supp. & Am. Compl. ¶ II.

2. Mrs. Stelly went shopping alone at the Dollar General for Dr. Pepper on the day of the accident. Exhibit 1, Stelly depo. at 89.

3. As she walked into the store carrying three 12-packs of twelve ounce soft drinks, one in each hand, and one under her right arm, Mrs. Stelly "stumbled and tripped . . ." [over a floor mat at the entrance of the Dollar General store.]

---

[1] Susan K. Stelly has brought a claim of negligence against defendant for a trip and fall occurring on defendant's business premises; Lenet L. Stelly has brought a claim for loss of consortium. [Doc. 17, pp. 1-3]

Page 1 of 10

*Id.* at 100.

4. At the time of the accident, Mrs. Stelly . . . was not looking down. *Id.* at 112-113.

5. Mrs. Stelly felt the floor mat between her toes and the surface of her flip flop before she fell. *Id.* at 113.

. . . .

7. Mrs. Stelly did not notice anything distinctive about the floor mat or any differences from the floor mat that was usually in place when she shopped at the store. *Id.* at 110-111.

. . . .

9. Mrs. Stelly did not notice whether the floor mat was lying flat when she first entered the store and then walked back out of the store immediately before the incident. *Id.* at 111-112.

10. After the incident, the mat was flipped . . . . *Id.* at 112.

. . . .

14. Amanda Barnet was employed by Dollar General from 2007 to 2012. Exhibit 2 Barnett depo. at 17-18.

15. Ms. Barnett was the cashier on duty at the time of the incident. *Id.* at 33-34.

. . . .

17. The subject floor mat did not have any curled up or warped edges. *Id.* at 112-113.

[Doc. 25-4, pp. 1-3; *see also* Doc. 35-1, pp. 1-3]

## II. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." *Id.*

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at § (c)(1).

> As summarized by the Fifth Circuit:
>
>> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994)(internal citations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### III. Applicable Law

La. R.S. 9:2800.6 ("Burden of proof in claims against merchants") provides in pertinent part as follows:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
>> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>>
>> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>>
>> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
> C. Definitions:
>
>> (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

La. R.S. § 9:2800.6.

### IV. Analysis

Defendant argues summary judgment should be granted in its favor, because: (1) plaintiff "is unable to show that the floor mat presented an unreasonable risk of harm"; and (2) plaintiff "has

failed to show that any Dollar General employee created or had actual or constructive notice of the allegedly dangerous condition." [Doc. 25-1, p. 5]

### A. Whether the floor mat presented an unreasonable risk of harm

Defendant asserts plaintiff "cannot meet her burden of showing that the floor mat presented an unreasonable risk of harm," arguing in support as follows:

> Mrs. Stelly admitted that she does not know what caused her fall and did not see anything unusual about the rug before her fall. Plaintiff merely speculates that the rug may have caused the fall. However, she testified that she was carrying three heavy 12-packs of Dr. Pepper, and hurrying to place them in her cart when she stumbled.[2] Mrs. Stelly admitted that she did not know what caused her to stumble, and she did not know whether the mat was flying [sic] flat on the floor at the time of the accident. There is no evidence beyond mere speculation that the mat somehow presented an unreasonable danger to patrons exercising ordinary care.

[Doc. 25-1, pp. 6-7 (internal citations omitted)]

In opposition, plaintiff asserts the mat was unreasonably dangerous, because rather than lying flat on the floor, "it was out of place and pressed up against the Dollar General's threshold, creating a raised edge (trip hazard) in the precise place where customers walked into the store." [Doc. 35, p. 14; *see also id.* at 5, 12] In support of the foregoing assertion, plaintiff has provided a copy of surveillance video of the incident, which appears to show the mat to be pushed up against the threshold of the entrance, thereby creating a raised edge.[3] [Id. at 20; *see also* Doc. 35-7] Plaintiff notes the placement of the floor mat was "in direct violation of Dollar General's safety policies,"

---

[2] To the extent defendant asserts plaintiff was "hurrying" to get to her cart and that the items she was carrying were "heavy," plaintiff points out defendant's only support for these assertions is a deposition question to which counsel for plaintiff objected on the basis that the question was leading. [Doc. 35-1, ¶ 4]

[3] The surveillance video additionally appears to show a Dollar General employee straighten the mat immediately after plaintiff's fall. [Doc. 35-7]

which require employees to "'[p]osition the floor mats directly against the threshold of the door ensuring the mats are not on top of the threshold creating a trip hazard.'"[4] [Id. at 16 (quoting sec. 42.2(9) of Dollar General's "Standing Operating Procedures" handbook); *see also* Doc. 35, pp. 5, 12] As further evidence that the particular mat at issue constituted an unreasonably dangerous condition, plaintiff points to various industry safety standards, which generally instruct that mats should either be installed in such a manner that they do move, or provided with slip resistant backing to prevent tripping hazards. [Doc. 35, pp. 17-18] Plaintiff has additionally submitted a series of e-mails between Dollar General and the manufacturer of the mat at issue, which plaintiff asserts show that prior to this accident, Dollar General stores "were reporting problems with the Waterhog Fashion mats 'creeping', moving or otherwise not staying in place." [Id. at 8] According to the e-mails, the manufacturer "offered to remedy the problem with a double-sided adhesive that could be installed under the mats to secure them in place," however, "Dollar General refused this solution."[5] [Id. at 8]

Following a review of the memoranda and evidence submitted by counsel in support of their respective positions, the Court finds plaintiff has demonstrated a genuine issue of material fact exists as to whether the interior mat constituted an unreasonably dangerous condition. Plaintiff has presented evidence in support of her argument that the mat was incorrectly placed at the time of her fall in violation of defendant's safety policies, as well as other industry safety standards, that the

---

[4]Plaintiff additionally points to deposition testimony of Sendie Trahan, the manager on duty at the time of this incident, who agreed a door mat that does not lie flat can pose a serious safety hazard. [Doc. 35, p. 16]

[5]Plaintiff further points out that after her fall, "Dollar General replaced all Waterhog Fashion mats with heavier mats that are more likely to stay in place. . . ." [Doc. 35, p. 8]

store manager on duty considered a misplaced mat to be a safety hazard, and that the particular mat at issue was acknowledged as a risk in correspondence between defendant and the manufacturer of the mat. *Roberts*, 266 F.3d at 373 (When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached.").

### B.     Whether defendant had notice of the alleged dangerous condition

Defendant asserts plaintiff "cannot meet her burden of showing that Dollar General created or had actual or constructive knowledge of the allegedly dangerous condition of the floor mat," arguing in support as follows:

> [Plaintiff] testified that she does not know whether any Dollar General employee caused the mat to flip up, or knew that it presented a dangerous condition before her fall, thus failing to present any evidence of actual or constructive notice.
>
> The deposition testimony of former Dollar General employee, Amanda Barnett, confirms that defendant did not create or have actual or constructive notice of the allegedly hazardous condition prior to the incident. Ms. Barnett was the cashier on duty at the time of plaintiff's incident.[6] She testified that the store had no problems with the subject floor mat on March 11, 2012, prior to plaintiff's incident. Ms. Barnett worked at Dollar General from 2007 to 2012. In her five years at the store, Ms. Barnett had never seen another customer trip over a floor mat at the entrance of the store. She testified that plaintiff's incident was the first incident involving a floor mat that the store had ever had. Ms. Barnett further confirmed that the subject rug did not have curled up or warped edges.

[Doc. 25-1, p. 9 (internal citations omitted)]

In opposition, plaintiff asserts defendant "had actual or constructive notice of the unreasonably dangerous condition created by the floor mat's raised edge (and propensity for

---

[6] Ms. Barnett was additionally a "third key manager" for the Erath store. [Doc. 35-4, pp. 4-10]

movement)," based upon the following evidence: As shown by the surveillance video, the mat was incorrectly placed at the store's entrance from the beginning of the surveillance video, which starts approximately twenty-five minutes before plaintiff's fall.[7] [Doc. 35, pp. 20, 21] Ms. Barnett was in close proximity to the floor mat for the entire twenty-five minutes prior to plaintiff's fall. [Id. at 21] Ms. Barnett "walked directly past [the mat] on more than one occasion before the fall." [Id.] Ms. Barnett "even stepped on the raised edge [of the mat] in the minutes immediately preceding the fall." [Id. (emphasis omitted)]

Plaintiff further notes, Ms. Barnett testified she "was responsible for inspecting the store's entrance for hazards in general, and specifically charged with inspecting the floor mat to ensure that it was properly positioned and lying flat on the ground." [Id. at 21; *see also* Doc. 35-4, pp. 16, 24, 33] Sendie Trahan, the store manager, confirmed the cashier (as well as other Dollar General employees) were responsible for inspecting the interior door mats throughout the day to ensure they were lying flat and not causing a tripping hazard. [Doc. 35, p. 22] Both Ms. Barnett and Ms. Trahan confirmed the interior door mat could easily be seen from the cash register. [Id.; *see also* Doc. 35-4, p. 33, l. 18-23] Ms. Trahan testified at times, the rugs "would blow up in the wind" when someone opened the entrance door, and at times the rugs "would get stuck in the door" due to foot traffic or wind. [Doc. 35, p. 23; *see also* Doc. 35-3, pp. 23-24, 26] According to plaintiff's testimony, immediately after her fall, Ms. Barnett stated, "'Oh, that durn wind is blowing so hard. That durn wind keeps blowing that rug.'" [Doc. 35-2, p. 15; Doc. 35, p. 23] Finally, plaintiff points to the

---

[7]The Court notes plaintiff makes reference to the surveillance video being fifty minutes in length, and asserts the video shows the mat was misplaced for at least twenty-five minutes prior to plaintiff's fall. However, the video provided to this Court appears to span a thirty-five minute time period, with plaintiff's fall occurring approximately fifteen minutes into the video.

correspondence between Dollar General and the manufacturer of the Waterhog Fashion mats, wherein Dollar General complains the mats were "creeping" or "slipping," arguing this is further evidence of Dollar General's constructive knowledge of the alleged dangerous condition. [Doc. 35, p. 23; *see also* Doc. 35-9, pp. 3-4]

In reply, defendant asserts, "It is Dollar General's position that the videotape does not show whether the mat was in any way misplaced at the time of the fall, nor does it show how long the condition existed." [Doc. 37-2, p. 3] Relying upon factually distinguishable jurisprudence, defendant then concludes: "Similarly, the video footage of the accident in the case at bar does not show the duration of the allegedly dangerous condition. The mere fact that Plaintiff slipped is insufficient to hold Dollar General liable without a 'positive showing' that the allegedly dangerous condition existed for some period of time prior to her fall under La. R.S. § 9:2800.6." [Id. at 5]

The Court has reviewed the surveillance video provided by plaintiff, and finds that the mat appears to be misplaced, in that a portion of it appears to be pushed up against the threshold of the entrance to the store, thereby causing a portion of the mat to have a raised edge. This condition appears to exist for the entire duration of the video prior to plaintiff's trip and fall. Additionally, the video shows Ms. Barnett was stationed in close proximity to the mat prior to plaintiff's fall and walked past the mat on several occasions.[8] These facts, as well as plaintiff's testimony that after her fall, Ms. Barnett stated, "That durn wind keeps blowing that rug," and the evidence submitted by plaintiff that defendant had complained to the manufacturer of the rugs that they were slipping, are sufficient to raise a genuine issue of material fact as to whether defendant had actual and/or

---

[8]Ms. Barnett testified the cash register at which she was stationed was located approximately ten feet from the front entrance of the store. [Doc. 35-4, pp. 15-16]

Page 9 of 10

constructive notice of the alleged, unreasonably dangerous condition. *Roberts*, 266 F.3d at 373.

## V.     Conclusion

For the reasons provided in this Memorandum Ruling, defendant's "Motion for Summary Judgment on Liability" [Doc. 25] is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 21st day of August, 2015.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE